UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KYLE BRAGG, *as President, Local 32BJ,*
*Service Employees International Union*,

                              Petitioner,

                    -v.-

KALIKOW FAMILY PARTNERSHIP LP, c/o
KALED MANAGEMENT CORP., and REALTY
ADVISORY BOARD ON LABOR RELATIONS,
INC.,

                              Respondents.

19 Civ. 8801 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

After Robert Concepcion, formerly a doorman and porter at a residential

building in Queens, New York, was terminated by the building owner and

manager, Kalikow Family Partnership LP c/o Kaled Management Corp.

("Kaled"), his union, Service Employees International Union, Local 32BJ ("Local

32BJ" or the "Union"), brought an arbitration proceeding pursuant to the

collective bargaining agreement (the "CBA") between and among Local 32BJ,

Kaled, and the Realty Advisory Board on Labor Relations, Inc. (the "RAB").  The

arbitrator assigned to hear the matter (the "Arbitrator") issued an award (the

"Award") finding that Kaled did not have just cause to terminate Concepcion

and ordering that his remedy take the form of termination pay — a version of

severance — rather than reinstatement.

Now, before this Court, Local 32BJ, on behalf of Concepcion, moves for

an order modifying the Award to provide for Concepcion's reinstatement, or in

the alternative, an order vacating the Award on the grounds that the CBA

requires that Kaled reinstate Concepcion.  In opposition, Kaled and the RAB ask the Court to confirm the Award, on the grounds that the Arbitrator acted within the scope of his authority in ordering that Concepcion be awarded termination pay, rather than reinstatement.  For the reasons explained below, the Award is vacated.

BACKGROUND[1]

A.    **Factual Background**

1.    **Concepcion's Employment and Termination**

Robert Concepcion was employed by Kaled as a doorman/porter at a residential building located at 69-39 Yellowstone Boulevard, Queens, New York (the "Building").  (Award 1-2).  Concepcion worked at the Building since 1991; he started as a temporary doorman/porter and became a permanent employee later that year.  (*Id.* at 2).  At all times relevant to this action, Local 32BJ has

---

[1]    The facts stated herein are drawn from Respondent RAB's Local Civil Rule 56.1 Statement ("RAB 56.1" (Dkt. #21)), which contains Petitioner's statements of facts, Respondents' answers thereto, Respondent Kaled's counterstatement of facts, and Respondent RAB's counterstatement of facts; the exhibits attached to the Declaration of Eyad Asad (Dkt. #15), including the Award, attached as Exhibit B (Dkt. #15-2); the exhibits attached to the Declaration of Robert S. Schwartz (Dkt. #19), including the CBA, attached as Exhibit 1 (Dkt. #19-1); and the exhibits attached to the Declaration of Jill R. Cohen (Dkt. #18-3), referred to as "Cohen Decl., Ex [ ]" (Dkt. #18-4).

For ease of reference, Petitioner's Memorandum of Law in Support of Petitioner's Motion for Summary Judgment will be referred to as "Pet. Br." (Dkt. #14); Respondent Kaled's Memorandum of Law in Opposition to Petitioner's Motion for Modification or Vacatur of Arbitration Award and in Support of Cross-Motion to Affirm the Award as "Kaled Br." (Dkt. #18-1); Respondent RAB's Memorandum of Law in Opposition to Petitioner's Motion to Modify or Vacate as "RAB Br." (Dkt. #20); and Petitioner's Reply Memorandum of Law as "Pet. Reply" (Dkt. #23).

been Concepcion's collective bargaining representative with respect to his employment at the Building.  (RAB 56.1 ¶ 10).[2]

From 1991 through early 2001, Concepcion's work week comprised four days as a doorman and one day as a porter.  (Award 2).  In early 2000, Concepcion suffered a herniated disc and, as an accommodation, was put on light duty.  (*Id.* at 3).  Physical therapy helped, and by 2011 or 2012 he was back to working his regular four days as a doorman and one day as a porter. (*Id.*).  Concepcion experienced intense pain in early 2015 and he again sought an accommodation, *e.g.*, help with his porter duties.  (*Id.*).  Instead of being granted the requested accommodation, he was given a two-month leave of absence.  (*Id.*).  Upon Concepcion's return, he was granted the elimination of his porter work but without substituting an additional day as a doorman.  (*Id.*). As a result, from mid-2015 onward, Concepcion worked a four-day work week as a doorman, for which he received four days of pay.  (*Id.*).  Concepcion did not view this as an "accommodation," but merely as reduced income.  (*Id.*). However, he did not file a grievance.  (*Id.*).

Fast-forwarding to 2018, Concepcion had a cleaning bill for his work uniform for which he sought reimbursement.  (Award 3).  The established practice, with which he was familiar, was to give the bill to the Building's superintendent.  (*Id.*).  Instead, on April 12, 2018, Concepcion forwarded his

---

[2]     Local 32BJ is an unincorporated association under New York law and is a labor organization within the meaning of the National Labor Relations Act, *see* 29 U.S.C. § 152(5).  (RAB 56.1 ¶ 4).  It represents approximately 170,000 building service workers, including doormen, concierge employees, and porters.  (*Id.* at ¶ 5).

cleaning bill to Jared Platt, the Vice President of Operations for Kaled (*id.* at 2), and ten others, including the President of the Union and other Union Benefit Fund and Kaled officials (*id.* at 3).  Concepcion explained that he submitted his reimbursement request to all of these individuals, not because Kaled had ever previously failed to reimburse him for cleaning expenses, but because he was concerned that labor negotiations that were then in high gear would interfere with his reimbursement.  (*Id.*).

Platt responded to Concepcion's email later that day, admonishing Concepcion for copying extraneous people on his reimbursement request and warning Concepcion that he would be subject to discipline if his conduct continued.  (Award 4).  Concepcion responded to Platt's email, again copying several Union and Kaled representatives.  (*Id.*).  In his email, Concepcion brought up prior grievances with Kaled, including the fact that, in response to Concepcion's disability, Kaled had reduced his workload rather than provide him with an accommodation.  (*Id.*).  This email resulted in Platt responding to Concepcion on April 18, 2018, with a "Final Warning" regarding his "recent acts of insubordination and disrespect to senior management at Kaled."  (*Id.* at 5).  On April 19, 2018, Concepcion responded in an email to Platt, copying six Kaled employees and six Union officials.  (*Id.*).  The subject line of the email read "Cheaters," and the email attached a New York Daily News article that described Kaled Management as having unlawfully overcharged tenants for rent.  (*Id.*).

On April 19, 2018, Kaled sent Concepcion a termination letter by email,

which letter stated:

> Dear Mr. Concepcion:
>
> On April 18, 2018 you received a "Final Warning" about your insubordination and continual harassment of senior management at Kaled Management Corp. ("Kaled").
>
> Instead of correcting your behavior, you continued on April 18th and 19th to harass Kaled personnel about old grievances and complain about your union representatives.   In addition, you slander Kaled by falsely republishing a Daily News Story about Kaled without any knowledge of the facts or circumstances. You are claiming Kaled is dishonest and has improperly taken money from its tenants.    This is gross insubordination and grounds for termination under our labor contract with Local 32BJ SEIU.
>
> As a Kaled employee, you are expected to perform your job in accordance with the rules and regulations in the labor contract.   Your unprovoked attack against Kaled this week shows your utter disregard to follow normal rules and procedures and total disrespect to your employer.  Kaled will not tolerate this type of behavior. You are being terminated effective today, April 19, 2018 and you are no longer allowed on the building premises.
>
> You ignored the Final Warning in the April 18th letter and now Kaled is terminating your employment.  You will be paid through your date of termination and you will receive all your accrued and unused pay in a separate check.
>
> A copy of this "Termination Letter" will be sent to your Local 32BJ Representative.
>
> Sincerely,
>
> Jordan Platt

(Award 6-7).  Accordingly, Kaled terminated Concepcion effective April 19,

2018.  (*Id.*).  Concepcion responded to Platt's termination email, again raising

5

employment disputes with Kaled that dated back to 2013.  (*Id.* at 7).  His email ended by citing several Biblical verses referencing divine punishment of evildoers.  (*Id.*).

### 2. The CBA's Grievance and Arbitration Procedure

Following Concepcion's termination, Local 32BJ initiated a grievance, pursuant to the CBA, alleging that Concepcion had been unjustly terminated. (RAB 56.1 ¶ 15).  Under the CBA, disciplinary disputes go through a multi-step grievance procedure, which culminates in arbitration.  (*See* CBA 13-15). Specifically, the CBA provides that, following exhaustion of the internal grievance process, if the parties disagree as to "interpretation, application[,] or performance of any part of [the] Agreement," they may submit the dispute to an arbitrator, who "shall have the power to decide all differences arising between the parties to this Agreement as to interpretation, application[,] or performance of this Agreement."  (*Id.* at 15).

Following the exhaustion of the internal grievance process, Local 32BJ filed for arbitration to challenge Concepcion's discharge.  (RAB 56.1 ¶¶ 15, 35). The RAB, as a signatory to the CBA, was also party to the arbitration.  (*Id.* at ¶¶ 7-8).  The CBA states in relevant part that:

> The procedure herein with respect to matters over which a Contract Arbitrator has jurisdiction shall be the sole and exclusive method for determination of all such issues, and the Arbitrator shall have the power to award appropriate remedies, the award being final and binding upon the parties and the employee(s) or Employer(s) involved.  Nothing herein shall be construed to forbid either party from resorting to court relief from, or to enforce rights under, any award.

6

(CBA 17-18).

The parties stipulated to submitting the following questions to Arbitrator Noel Berman: "Was the Grievant discharged for just cause? If not, what shall be the remedy?" (Award 2; RAB 56.1 ¶ 36). The Arbitrator convened an arbitration hearing on May 13, 2019, to hear the dispute between Local 32BJ and Kaled over Concepcion's termination. (RAB 56.1 ¶ 16). At the May 13, 2019 hearing, Local 32BJ, Kaled, and the RAB were represented by counsel, and each was given a full and fair opportunity to present testimony, examine and cross-examine witnesses, and offer documents in support of their positions. (*See id.* at ¶ 17). The arbitration hearing closed on May 13, 2019, and was submitted to the Arbitrator for the issuance of an award. (*See id.* at ¶ 18).

### 3.    The Award

The Arbitrator issued the Award on June 14, 2019. (*See generally* Award). In the Award, the Arbitrator observed that "Concepcion was wrong in not following established procedure in submitting his cleaning bill, and copying everyone he could think of at the Union was both foolish and mean spirited." (*Id.* at 8). However, he concluded that Concepcion's conduct did *not* rise to "gross insubordination" and that the just cause standard was therefore not met. (*Id.* at 8-9).

The Arbitrator went on to consider the remedy. (Award 9). He explained that "[w]hile reinstatement is the usual remedy, it is not the required nor necessary one." (*Id.*). He went on to reason that reinstatement "would be plain

wrong" here, because Concepcion had exhibited disloyalty to Kaled by circulating the Daily News story. (*Id*.). The Arbitrator noted that he was "follow[ing] the guidance of New York Arbitrator Scott D. Shriftman in a noted and noteworthy case … who devised a monetary remedy where reinstatement was similarly inappropriate." (*Id*. (citing *Local 2179, United Automobile Workers of Am.* v. *The Design Tex Group*, *award confirmed*, No. 07 Civ. 80 (CSH), 2007 WL 2687628 (S.D.N.Y. Sept. 13, 2007)). Accordingly, the Arbitrator ordered Kaled to "pay to Concepcion, within (10) ten days of [the Award], the 'termination pay' he would have received under the collective bargaining agreement had he been terminated on April 19, 2018 for reason other than just cause or inability to perform his duties." (*Id*.).

On June 26, 2019, the Union submitted a letter to the Arbitrator, drawing his attention to a provision in Article IV of the CBA, titled "Management Rights," which states:

> If any employee [other than a Working Superintendent covered in Article XVI] is unjustly discharged, the employee shall be reinstated without loss of seniority or rank and without salary reduction. The Joint Industry Grievance Committee or the Arbitrator may determine whether, and to what extent, the employee shall be compensated by the Employer for time lost.

(Cohen Decl., Ex. E). The Union requested that the Arbitrator modify the Award in light of the above-cited CBA provision. (*Id*.). Kaled opposed the Union's request for modification on the ground that the "Award is final and binding and within the broad powers [the arbitrator] ha[s] under the [CBA.]"

(*Id.*, Ex. F).  On July 1, 2019, the Arbitrator emailed the parties to the arbitration to deny the Union's request for reconsideration, stating:

> Gentlemen:
>
> Thank you all for your interest — and concern.  But being merely 'wrong,' if that be the ultimate judgment, doesn't give me the opportunity to do more.  The Arbitrator having spoken is now functus officio.

 (*Id.*, Ex. G).

## B.    Procedural Background

On August 30, 2019, Petitioner Kyle Bragg, President of the Union, filed a petition to modify or vacate the Award in the Supreme Court of the State of New York, County of New York; the petition was assigned Index No. 655011/19.  (*See* Dkt. #1-1).  On September 23, 2019, the RAB filed a notice of removal to the United States District Court for the Southern District of New York.  (Dkt. #1).  On September 30, 2019, this Court ordered Petitioner to move for modification or vacatur of the Award in the form of a motion for summary judgment, in accordance with Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1 of the Southern District of New York.  (Dkt. #9). The Court then set a briefing schedule.  (*Id.*).

Petitioner filed his motion to modify or vacate the Award, in the form of a motion for summary judgment, on October 28, 2019.  (*See* Dkt. #12-15).  On December 9, 2019, Kaled filed a brief and papers opposing Petitioner's motion and also filed a cross-motion to affirm the Award.  (*See* Dkt. #18-19).  The RAB also filed a brief in opposition to Petitioner's motion, and in that brief requested that the Court confirm the Award.  (*See* Dkt. #20 at 11).  Petitioner filed his

reply brief on December 23, 2019.  (Dkt. #23).  Having recognized that
Respondents in this case were seeking their own relief in the form of
confirmation of the Award, on April 15, 2020, the Court invited Respondents to
file reply briefs in support of their motions for confirmation of the Award.  (Dkt.
#24).  On April 24, 2020, Respondents indicated that they would not file such
replies.  (Dkt. #25).  Accordingly, the motions are fully briefed.

## DISCUSSION

### A.   Applicable Law

#### 1.   Standard of Review for Labor Arbitration Awards

Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C.
§ 185, rather than the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, provides
that federal district courts have jurisdiction over violations of labor contracts.
*See Nat'l Football League Mgmt. Council* v. *Nat'l Football League Players Ass'n*,
820 F.3d 527, 536, 545 n.13 (2d Cir. 2016).  Actions to confirm and vacate
arbitration awards fall within that statute.  *See, e.g.*, *Kallen* v. *Dist. 1199, Nat'l
Union of Hosp. & Health Care Emps.*, 574 F.2d 723, 725 (2d Cir. 1978); *Local
802, Associated Musicians of Greater New York* v. *Parker Meridien Hotel*, 145
F.3d 85, 88 (2d Cir. 1998).  At the same time, federal courts enforcing labor
arbitration awards look to the FAA "to guide the development of rules of federal
common law to govern [] disputes [regarding labor contracts] pursuant to the
authority to develop such rules granted under 29 U.S.C. § 185."  *Supreme Oil
Co.* v. *Abondolo*, 568 F. Supp. 2d 401, 405 n.2 (S.D.N.Y. 2008); *see United
Paperworkers Int'l Union* v. *Misco, Inc.*, 484 U.S. 29, 40 n.9 (1987) ("The

[Federal] Arbitration Act does not apply to 'contracts of employment of ...
workers engaged in foreign or interstate commerce,' 9 U.S.C. § 1, but the
federal courts have often looked to the Act for guidance in labor arbitration
cases, especially in the wake of the holding that § 301 of the [LMRA] ...,
empowers the federal courts to fashion rules of federal common law to govern
suits for violation[s] of contracts between an employer and a labor organization
under the federal labor laws." (internal quotation marks and alterations
omitted)).

The Second Circuit has "repeatedly recognized the strong deference
appropriately due arbitral awards and the arbitral process, and has limited its
review of arbitration awards in obeisance to that process." *Porzig* v. *Dresdner,
Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 138 (2d Cir. 2007). "Further,
'the federal policy in favor of enforcing arbitration awards is particularly strong
with respect to arbitration of labor disputes.'" *Supreme Oil Co.,* 568 F. Supp.
2d at 406 (quoting *N.Y. Hotel & Motel Trades Council AFL-CIO* v. *Hotel St.
George*, 988 F. Supp. 770, 774 (S.D.N.Y. 1997)). "Judicial review of a labor-
arbitration decision pursuant to [a collective bargaining] agreement is very
limited." *Major League Baseball Players Ass'n* v. *Garvey*, 532 U.S. 504, 509
(2001). "[I]f an 'arbitrator is even arguably construing or applying the contract
and acting within the scope of his authority,' the fact that 'a court is convinced
he committed serious error does not suffice to overturn his decision.'" *Id.*
(quoting *E. Associated Coal Corp.* v. *United Mine Workers of Am., Dist. 17*, 531
U.S. 57, 62 (2000)); *see also Wackenhut Corp.* v. *Amalgamated Local 515*, 126

11

F.3d 29, 31-32 (2d Cir. 1997) ("[A]n arbitration award must be upheld when the arbitrator 'offer[s] even a barely colorable justification for the outcome reached.'" (second alteration in original) (quoting *Matter of Andros Compania Maritima, S.A. (Marc Rich & Co., A.G.)*, 579 F.2d 691, 704 (2d Cir. 1978)).

However, "great deference … is not the equivalent of a grant of limitless power." *Leed Architectural Prods., Inc.* v. *United Steelworkers of Am., Local 6674*, 916 F.2d 63, 65 (2d Cir. 1990). "An arbitrator's authority to settle disputes under a collective bargaining agreement is contractual in nature, and is limited to the powers that the agreement confers." *Id.*; *accord Local 1199, Drug, Hosp. & Health Care Emps. Union, RWDSU, AFL-CIO* v. *Brooks Drug Co.*, 956 F.2d 22, 25 (2d Cir. 1992) ("The scope of authority of arbitrators generally depends on the intention of the parties to an arbitration, and is determined by the agreement or submission." (internal quotation marks and alterations omitted)). "This rule applies not only to the arbitrator's substantive findings, but also to his choice of remedies[:] He may not impose a remedy which directly contradicts the express language of the collective bargaining agreement." *Leed Architectural Prods.*, 916 F.2d at 65 (internal quotation marks omitted). "[W]hen the arbitrator strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice … his decision may be unenforceable." *Major League Baseball*, 532 U.S. at 509 (internal quotation marks and alterations omitted).

"Since the arbitrator is not free merely to dispense his own brand of industrial justice … [t]he principal question for the reviewing court is whether

12

the arbitrator's award draws its essence from the collective bargaining agreement." *Saint Mary Home, Inc.* v. *Serv. Emps. Int'l Union, Dist. 1199*, 116 F.3d 41, 44 (2d Cir. 1997) (internal quotation marks and alteration omitted); *accord United Steelworkers of Am.* v. *Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960) ("[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice."). An arbitrator's "award is legitimate only so long as it draws it essence from the collective bargaining agreement." *United Steelworkers*, 363 U.S. at 597. "When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." *Id.*; *see also 187 Concourse Assocs.* v. *Fishman*, 399 F.3d 524, 527 (2d Cir. 2005) (concluding that a court may vacate an award when "the arbitrator exceeds his powers" by acting beyond the scope of authority under the agreement or submission).

### 2.  Standard of Review for Motions for Summary Judgment

District courts treat an application to confirm or vacate an arbitral award as akin to a motion for summary judgment. *City of New York* v. *Mickalis Pawn Shop, LLC*, 645 F.3d 114, 136 (2d Cir. 2011). A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To discharge this burden, a summary-judgment movant "bears the initial responsibility of ... demonstrat[ing] the absence of a genuine issue of material fact." *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323 (1986). "A

13

'material' fact is one capable of influencing the case's outcome under governing substantive law, and a 'genuine' dispute is one as to which the evidence would permit a reasonable juror to find for the party opposing the motion." *Figueroa* v. *Mazza*, 825 F.3d 89, 98 (2d Cir. 2016) (quoting *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). If a movant makes this showing, the non-movant "must 'set forth specific facts demonstrating that there is a genuine issue for trial,' and cannot 'merely rest on the allegations or denials' contained in the pleadings." *Trs. for the Mason Tenders Dist. Council Welfare Fund, Pension Fund, Annuity Fund, and Training Program Fund and Bonanza* v. *YES Restoration*, No. 14 Civ. 8536 (KPF), 2015 WL 3822764, at *3 (S.D.N.Y. June 19, 2015) (quoting *Wright* v. *Goord*, 554 F.3d 255, 266 (2d Cir. 2009)).

"A court reviewing a motion for summary judgment must 'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'" *Beyer* v. *Cty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008) (quoting *Dallas Aerospace, Inc.* v. *CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003)).

**B.    Analysis**

Petitioner argues that the Arbitrator's decision to not order reinstatement of Concepcion, in the absence of just cause for his termination, is contrary to the plain language of the CBA, which provides that if an employee is "unjustly discharged … the employee shall be reinstated without loss of seniority or rank and without salary reduction." (*See* Pet. Br. 7-14). Petitioner claims that by providing a remedy that directly contradicts the CBA, the Award did not draw

14

its essence from the CBA, and did not effectuate the parties' intent reflected in the plain language of the CBA.  (*See id.* at 2, 13-14).

The case law supports vacating an arbitration award under the LMRA where the arbitrator exceeds his authority by providing for a remedy that contradicts the express terms of the collective bargaining agreement.  In *Leed Architectural Products,* the employer and employee had bargained for a wage scale that was incorporated into the parties' collective bargaining agreement. 916 F.2d at 64.  In contravention of the wage rates set forth in the agreement, the employer promised a new employee a higher wage rate.  *Id.*  Four employee-grievants brought suit challenging the disparate wage rate.  *Id.*  The arbitrator found that the employer had violated the collective bargaining agreement by agreeing to the higher rate.  *Id.*  However, instead of ordering that the new employee's wage be reduced, the arbitrator ordered that the wage rate of the four similarly-situated employee-grievants be raised, since it would be unfair to allow the employer to make the promise to the new employee and then escape its obligation.  *Id.* at 65.

The Second Circuit vacated the arbitration award, concluding that the arbitrator's award — raising the wage rate of the four employee-grievants — violated the express terms of the collective bargaining agreement.  *Leed Architectural Prods.*, 916 F.2d at 67.  The wage rate of the four employee-grievants *had* been established through the collective bargaining process and memorialized in the collective bargaining agreement:  It was the wage rate for the new employee that had not been.  *Id.* at 66.  The Court rejected the

15

arbitrator's attempt to "equalize" the employee-grievants' salary position with that of the new employee. *Id.* Although the arbitrator acted within his authority in determining that the employer violated the collective bargaining agreement, the Second Circuit concluded that the arbitrator could not base his award on what he considered "right." *Id.* Accordingly, by permitting the new employee's wage rate to stand and by increasing the wage rate set by the collective bargaining agreement, the arbitrator had exceeded his authority. *Id.*

In *187 Concourse*, an employer and a terminated employee submitted to an arbitrator, pursuant to a collective bargaining agreement, the same two questions submitted to the arbitrator in this case: "Was the [employee] discharged for just cause? If not, what shall the remedy be?" 399 F.3d at 526 (internal quotation marks omitted). The arbitrator found that the employee's behavior was "completely unacceptable in the workplace and [that] the Employer had no option but to terminate the Grievant." *Id.* Nevertheless, the arbitrator reinstated the employee to his prior position with a final warning, noting that his prior good employment history merited a lesser punishment for the offenses than termination. *Id.* The Second Circuit vacated the arbitrator's award, holding that the arbitrator had exceeded his authority in reinstating the employee:

> [T]he arbitrator's authority was limited by both the CBA and the questions submitted by the parties for arbitration. … Upon a finding of just cause, there was nothing further to be done. The arbitrator had no authority, under either the CBA or the submission, to fashion an alternative remedy. By ordering [the

> employee] reinstated, the arbitrator exceeded his
> authority.

*Id.* at 527.

As in *Leed Architectural Products* and *187 Concourse*, the Arbitrator here exceeded the authority afforded to him under the CBA by fashioning a remedy in contravention of its language. The CBA plainly states that "unjustly discharged [employees] … *shall* be reinstated[.]" (CBA 13 (emphasis added)). The inclusion of the word "shall" makes reinstatement mandatory; it is not up to the Arbitrator or Kaled to determine whether reinstatement is the correct or fair remedy based upon their own discretion. *See* RESTATEMENT (SECOND) CONTRACTS § 203 ("[A]n interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect."). The CBA does not qualify the reinstatement obligation. For this reason, the Court finds that the Award did not draw its essence from the CBA, which mandates reinstatement for an employee who is unjustly discharged. *See Int'l Bhd. of Elec. Workers, AFL-CIO, Local 1522* v. *AT & T Microelectronics, Inc.*, 909 F. Supp. 294, 297 (E.D. Pa. 1995) (holding that arbitrator's decision to reinstate without backpay as remedy for discharge without just cause did not draw its essence from the CBA, where the express terms of the CBA "plainly set[ ] forth the remedy in the event that the arbitrator concludes that there was a lack of just cause," which remedy was "the grievant must be reinstated and must be awarded back pay").

Respondents' arguments to the contrary are unavailing. *First*, Kaled argues that there is no basis for vacatur because the Arbitrator considered only those questions presented to him: (i) whether Concepcion was terminated for just cause; and (ii) if not, what shall be the remedy. (*See* Kaled Br. 10).[3]  Kaled reasons that the parties specifically asked the Arbitrator to determine the remedy in the event Concepcion's termination was found to be not for just cause.  While it is true that the Arbitrator addressed only the two questions submitted to him by the parties, the Arbitrator's authority was limited by both the questions presented to him *and* the CBA.  *See 187 Concourse*, 399 F.3d at 527; *Leed Architectural Prods.*, 916 F.2d at 66.  In answering the second question, the Arbitrator decided that he could not reinstate Concepcion based on an extra-contractual theory that Concepcion had been disloyal in disseminating an article about Kaled.  (*See* Award 9).  In so doing, the Arbitrator fashioned his own brand of industrial justice, rather than awarding a remedy faithful to the CBA.  *See Harry Hoffman Printing, Inc.* v. *Graphic*

---

[3]     Kaled recognizes that the Court's jurisdiction in this case comes from the LMRA.  (*See* Kaled Br. 4).  However, when arguing that the Court should not vacate or modify the Award, it argues that vacatur and modification would be inappropriate under the FAA. (*See id.* at 4-9).  While the Court understands Kaled to be taking its cue from Petitioner's brief, which asks for relief under the FAA, the Court's analysis here is guided by federal common law established pursuant to the LMRA, rather than the strict confines of the FAA.  *See United Paperworkers Int'l Union, AFL-CIO* v. *Misco, Inc.*, 484 U.S. 29, 40 n.9 (1987) ("The [FAA] does not apply to 'contracts of employment of ... workers engaged in foreign or interstate commerce,' 9 U.S.C. § 1, but the federal courts have often looked to the Act for guidance in labor arbitration cases, especially in the wake of the holding that § 301 of the [LMRA] ..., empowers the federal courts to fashion rules of federal common law to govern suits for violation[s] of contracts between an employer and a labor organization under the federal labor laws." (internal quotation marks and alterations omitted)); *St. Barnabas Hosp.* v. *1199SEIU, United Healthcare Workers East*, No. 16 Civ. 4117 (VEC), 2016 WL 4146143, at *2 (S.D.N.Y. Aug. 2, 2016) (The LMRA not only confers jurisdiction, but has created "a body of federal law analytically distinct from the [FAA].").

*Commc'ns Int'l Union, Local 261*, 950 F.2d 95, 99-100 (2d Cir. 1991) (affirming vacatur of award where arbitral award, in imposing a due process obligation on employer prior to terminating striking employees, did not draw from the essence of the contract); *In re Marine Pollution Serv., Inc.*, 857 F.2d 91, 94 (2d Cir. 1988) ("When it is clear that the arbitrator '*must* have based his award on some body of thought, or feeling, or policy, or law that is outside the contract (and not incorporated in it by reference, either …),' the arbitrator has failed to draw the award from the essence of the collective bargaining agreement." (emphasis and alterations in original) (quoting *Ethyl Corp.* v. *United Steelworkers of Am. AFL-CIO-CLC*, 768 F.2d 180, 187 (7th Cir. 1985))).

*Second*, Kaled argues that the CBA authorizes an arbitrator to award "appropriate" remedies, which is what the Arbitrator here did. (Kaled Br. 6). Kaled contends that if the parties had wanted the Arbitrator to be bound to a specific remedy, such as reinstatement, they would have plainly said so in the CBA, rather than explicitly empowering the Arbitrator to fashion an "appropriate" remedy. (*Id.*).[4]  Kaled also notes that the Arbitrator provided a

---

[4]    Kaled also implies that the CBA's use of the term "unjustly discharged" is not the legal equivalent of termination for "just cause." (Kaled Br. 9).  The CBA contains no indication that the terms have any difference in meaning.  *See Sparks* v. *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am., UAW*, 99 F.3d 1140 (TABLE), 1996 WL 487252, at *3 (6th Cir. 1996) ("It would be ironic indeed if a CBA negotiated by a union employer that included language concerning 'unjust discharge' was construed in such a hyper-technical manner that 'unjust discharge' were not regarded as the linguistic equivalent of 'just cause[.]'").  In fact, the CBA, which contains no other limit on the employer's authority to discharge an employee, itself treats the two phrases interchangeably, with the Management Rights article proscribing conduct in the event an employee is "unjustly discharged" and the termination pay provision referring to employees terminated for "any reason other than just cause." (*Compare* CBA 13, *with id.* at 102-04).  Tellingly, the Arbitrator's reasoning in this case was not predicated on the idea that "unjustly discharged" and termination for "just cause" are somehow distinct concepts. (*See* Award 9).

19

well-reasoned explanation for his Award.  (*Id.* at 7).  But however thoughtful his analysis, the Arbitrator's authority was limited to awarding "appropriate" remedies, not *any* remedy.  An appropriate remedy for an employee who was unjustly discharged is, with reference to the CBA, the mandated remedy of reinstatement.  *Cf. LIN Television Corp.* v. *Nat'l Assoc. of Broadcast Emps. & Technicians*, 219 F. Supp. 3d 372, 377 (W.D.N.Y. 2016) (concluding that arbitrator's remedy drew its essence from the collective bargaining agreement, where agreement "unambiguously authorize[d] the arbitrator to shape an 'appropriate remedy' … [and] the [agreement] ma[de] no limitations on the power to shape a remedy").[5]  To review, because the Arbitrator crafted his own remedy without even acknowledging the provision of the CBA that mandates reinstatement, the Award failed to "draw[] its essence from the collective bargaining agreement," *United Steelworkers*, 363 U.S. at 597.

*Third*, the RAB argues that the Arbitrator did in fact invoke a remedy under the CBA.  (RAB Br. 5).  In support of this argument, the RAB points to a provision in Article XIX, "General Clauses," which states:

> 20.  *Termination Pay*
>
> …
>
> (b) In case of termination of employment for any reason other than just cause or in accordance with paragraph (a) above, the employee shall receive, in addition to accrued vacation, termination pay according to years of

---

[5]     Pursuant to the CBA, "appropriate" remedies may also include back pay or a determination of whether to treat the period from an employee's termination to the date of the award as a disciplinary suspension.  Self-evidently, an "appropriate" remedy cannot be one that renders the language of the CBA meaningless.

> service in the building or with the same owner,
> whichever is greater, as follows:
>
> Employees with:                        Pay:
>
> 0-5 years ...................................1 week's wages
> 5 but less than 10 years. ...........2 weeks' wages
> 10 but less than 12 years ..........4 weeks' wages
> 12 but less than 15 years ..........5 weeks' wages
> 15 but less than 17 years ..........7 weeks' wages
> 17 but less than 20 years ..........8 weeks' wages
> 20 but less than 22 years. .........9 weeks' wages
> 22 but less than 25 years ........10 weeks' wages
> 25 or more ..............................11 weeks' wages

(*Id.* (quoting (CBA 102-04)).  The RAB contends that this provision

"[p]resumably … applies where an employee was not terminated for just cause,

but is functionally terminated because his return to employment would be

'inappropriate.'" (*Id.*).  But its citation to this section of the CBA misses the

point.  While termination pay is available to an arbitrator to award when an

employee is unjustly discharged, it is not the only type of remedy that can be

awarded, and even when awarded, it is not a sufficient remedy.  Accepting the

RAB's argument that this "Termination Pay" provision supplies the remedy

awarded by the Arbitrator still requires the Court to disregard the provision in

the CBA requiring that unjustly terminated employees be reinstated.

*Fourth*, the RAB argues that the provision of the CBA that states that an

employee who is "unjustly discharged … shall be reinstated" does not compel

an arbitrator to reinstate an employee terminated other than for just cause.

(RAB Br. 6).  The provision states, in full:

> Any employee who is discharged shall be furnished a
> written statement of reason(s) for such discharge no
> later than five (5) working days after the date of

> discharge.  If any employee [other than a Working
> Superintendent covered in Article XVI] is unjustly
> discharged, the employee shall be reinstated without
> loss of seniority or rank and without salary reduction.
> The Joint Industry Grievance Committee or the
> Arbitrator may determine whether, and to what extent,
> the employee shall be compensated by the Employer for
> time lost.

(CBA 12-13).  RAB argues that this provision only confers upon an arbitrator the ability to determine compensation for lost time when an employee is returned to work.  (RAB Br. 6).  But that very argument presumes that the arbitrator is making a determination with respect to someone who has already been reinstated.  As explained above, the provision requiring reinstatement is not permissive.  It requires an unjustly discharged employee to be reinstated, with no exceptions.

Finally, a review of the case on which the Arbitrator relied in refusing to order reinstatement reveals that while the facts of that case are similar to those in the case at bar, a fundamental difference in the collective bargaining agreements dictates a different result.  In *Local 2179, United Automobile Workers of Am.* v. *The Design Tex Group*, No. 07 Civ. 80 (CSH), 2007 WL 2687628 (S.D.N.Y. Sept. 13, 2007), an employer discharged two members of a union for intimidating and attempting to persuade their co-workers to slow down their work and not work overtime.  *Id.* at *2.  The arbitrator found that the two were "guilty of serious misconduct," but decided, similarly to this case, that just cause to discharge them was lacking.  *Id.*  The arbitrator also concluded, similar to this case, that reinstatement was not appropriate because the employer's ability to trust that the two employees could perform

22

their jobs fully and with respect for the company had been destroyed. *Id.*
Acknowledging that some other arbitrators might have opted to award
reinstatement without back pay, Arbitrator Elliott Shriftman determined that
the appropriate remedy was instead six months' back wages. *Id.* The union
filed an action to vacate the arbitration award insofar as it failed to reinstate
the two discharged employees. *Id.* at *3.

The court framed the issue as "whether the CBA plainly required the
remedy for [the employer's] breach to include reinstatement of [the employees]."
2007 WL 2687628, at *4. It conducted a careful analysis of the collective
bargaining agreement language and concluded that the language did *not* clearly
require the arbitrator to reinstate an employee who had been discharged
without just cause. *Id.* at *4-5. Rather, the collective bargaining agreement in
that case merely permitted arbitrators to order reinstatement and award
damages. *Id.* at *5. Therefore, the court concluded that Arbitrator Shriftman's
decision to award damages without reinstatement was a plausible
interpretation of the collective bargaining agreement, and thus sufficiently drew
its essence from such agreement. *Id.*

As detailed above, the CBA here *requires*, rather than *permits*, the
employer to reinstate an unjustly discharged employee. This fact compels a
different result from the court's decision in *Local 2179*. Accordingly, the
Arbitrator's decision, after concluding that Concepcion was unjustly
discharged, to award termination pay in lieu of reinstatement did not draw its
essence from the CBA. For this reason, the Award is vacated.

23

**CONCLUSION**

For the reasons explained above, the Award is vacated.  The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.  *See Nat'l Football League Mgmt. Council* v. *Nat'l Football League Players Ass'n*, 125 F. Supp. 3d 449, 474 (S.D.N.Y. 2015) (closing case after vacating arbitral award), *rev'd on other grounds*, 820 F.3d 527 (2d Cir. 2016); *see also Ottley* v. *Schwartzberg*, 819 F.2d 373, 376 (2d Cir. 1987).

SO ORDERED.

Dated:     April 30, 2020
           New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge